UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT TERRELL,

        Petitioner,

    v.

                        CASE NO. 2:07-CV-14647
                        JUDGE DENISE PAGE HOOD
                        MAGISTRATE JUDGE PAUL J. KOMIVES

LINDA METRISH,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.     *Factual Background Underlying Petitioner's Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    E.     *Validity of Plea and Ineffective Assistance of Counsel (Claims I & II)* . . . . . . . . . . . . . . . . . . . 13
        1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            a. Factual Basis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            b. Coercion by Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            c. Counsel's Failure to Challenge Inculpatory Statement . . . . . . . . . . . . . . . . . . . . . . 20
            d. Counsel's Failure to Investigate and Meet with Petitioner . . . . . . . . . . . . . . . . . . . . 21
            e. Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    E.     *Post-Conviction Relief Claim (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    F.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

\*       \*       \*       \*       \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus.

II.    REPORT:

A.    *Procedural History*

       1.     Petitioner Vincent Terrell is a state prisoner, currently confined at the Kinross

Correctional Facility in Kincheloe, Michigan.

      2.      On February 13, 2003, petitioner was convicted of two counts of second degree murder, MICH. COMP. LAWS § 750.316; one count of being a felon in possession of a firearm, MICH. COMP. LAWS § 750.224; and one count of possessing a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, pursuant to his guilty plea in the Wayne County Circuit Court.  On March 4, 2003, petitioner was sentenced in accordance with the plea agreement to concurrent terms of 30-50 years' imprisonment on the murder convictions and 2-5 years' imprisonment on the felon-in-possession conviction, as well as to a mandatory consecutive term of two years' imprisonment on felony firearm conviction.

      3.      Petitioner filed a motion to withdraw his plea in the trial court, asserting that his plea was not knowing and voluntary, and that counsel was ineffective.  The trial court denied the motion on April 16, 2004.

      4.      Petitioner, through counsel, filed an application for leave to appeal in the Michigan Court of Appeals raising the following claims:

      I.      DEFENDANT'S PLEA WAS NOT ENTERED KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY THEREFORE IT IS NOT VALID AND MUST BE VACATED.

      II.      TRIAL COUNSEL'S FAILURE TO INVESTIGATE THIS CASE, FAILURE TO PROMOTE A DEFENSE AND COERCION OF DEFENDANT INTO THE PLEA BARGAIN RENDERED HER ASSISTANCE INEFFECTIVE.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented."  *See People v. Terrell*, No. 255327 (Mich. Ct. App. Aug. 25, 2004).

      5.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan

Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard

order.  *See People v. Terrell*, 472 Mich. 879, 693 N.W.2d 821 (2005).

      6.      In January 2006, petitioner filed a motion for relief from judgment in the trial court

pursuant to MICH. CT. R. 6.500-.508, challenging the validity of his plea on numerous grounds.

Petitioner also filed a motion for an evidentiary hearing and a motion to disqualify the trial judge.

On May 16, 2006, the trial court denied the motion for relief from judgment.  *See People v. Terrell*,

No. 02-013284 (Wayne County, Mich., Cir. Ct. May 16, 2006).  Petitioner subsequently filed a

motion  to amend his motion for relief from judgment.  The trial court denied the motion as a

prohibited successive motion, *see* MICH. CT. R. 6.502(G).  Petitioner thereafter filed applications for

leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court, raising the

following claims:

      I.      WAS DEFENDANT-APPELLANT DEPRIVED OF HIS
CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND TO
EQUAL PROTECTION UNDER MICH CONST 1963, ART 1, §17, §20;
U.S. CONST. AMS. VI, XIV, WHERE THE TRIAL COURT ABUSED ITS
DISCRETION AND COMMITTED ERROR IN DENYING HIS MOTION
FOR RELIEF FROM JUDGMENT, WHERE HE WAS DEPRIVED OF HIS
SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF
TRIAL COUNSEL WHERE TRIAL COUNSEL: (1) FAILED TO
CHALLENGE THE INCULPATORY STATEMENT WHICH WAS
FABRICATED BY THE INVESTIGATING OFFICER; (2) COUNSEL
FAILED TO INVESTIGATE THE CASE AND THE LEGAL ISSUES; (3)
WHERE COUNSEL FAILED TO MEET WITH APPELLANT IN THE
JAIL TO DISCUSS THE CASE; (4) WHERE COUNSEL FAILED TO
INVESTIGATE KNOWN DEFENSE WITNESSES; (5) WHERE TRIAL
COUNSEL EMPLOYED COERCIVE TACTICS TO INDUCE
APPELLANT INTO PLEADING GUILTY; (6) WHERE TRIAL
COUNSEL'S PERFORMANCE FELL BELOW AN OBJECTIVE
STANDARD OF REASONABLENESS AND BUT FOR COUNSEL'S
SERIOUS ACTS AND OMISSIONS, THERE WAS A REASONABLE
LIKELIHOOD FOR A DIFFERENT OUTCOME?

      II.      WAS DEFENDANT-APPELLANT DEPRIVED OF HIS

2:07-cv-14647-DPH-PJK   Doc # 20   Filed 02/13/09   Pg 4 of 26   Pg ID 796

CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND TO EQUAL PROTECTION UNDER MICH CONST 1963, ART 1, §17, §20; U.S. CONST AMS. V, XIV, WHERE THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED ERROR IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA AND MOTION FOR RELIEF FROM JUDGMENT, WHERE THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH A FACTUAL BASIS FOR THE PLEA TO SECOND DEGREE MURDER; WHERE THE PLEA WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY GIVEN BECAUSE THE PLEA WAS BASED ON COERCIVE TACTICS EMPLOYED BY TRIAL COUNSEL TO INDUCE THE PLEA?

III.    WAS DEFENDANT-APPELLANT DEPRIVED OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND TO EQUAL PROTECTION UNDER MICH CONST 1963, ART 1, §17, §20; U.S. CONST AMS. VI, XIV, WHERE THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED CLEAR ERROR IN DENYING HIS MOTION FOR RELIEF FROM JUDGMENT WHERE SHE FAILED TO ADDRESS THE MERITS OF THE MOTION TO DISQUALIFY HERSELF; WHERE THE TRIAL JUDGE FAILED TO DISQUALIFY ITSELF BASED ON PERSONAL ANIMUS, BIAS AND PREJUDICE AGAINST APPELLANT; WHERE THE TRIAL JUDGE OPENLY STATED THAT IF THE COURT OF APPEALS GRANTED APPELLANT A REMAND FOR A GINTHER HEARING BASED ON INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, THAT SHE WOULD NOT PUT APPELLANT'S TRIAL COUNSEL, MS. GABI SILVER ON THE STAND, WAS APPELLANT ENTITLED TO HAVE ANOTHER JUDGE PRESIDE OVER THE PROCEEDINGS WHERE THE TRIAL JUDGE EXHIBITED PERSONAL ANIMUS, BIASED AND PREJUDICE TOWARDS APPELLANT?

The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Terrell*, 480 Mich. 890, 738 N.W.2d 712 (2007); *People v. Terrell*, No. 275115 (Mich. Ct. App. May 30, 2007).

7.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on October 30, 2007.  As grounds for the writ of habeas corpus, he raises the claims that he raised in the state courts in his motion for relief from judgment.

4

8.      Respondent filed her answer on April 11, 2008. She contends that petitioner's claims are without merit, and that petitioner's third claim is procedurally defaulted.

9.      Petitioner filed a reply to respondent's answer on May 23, 2008.

B.    *Factual Background Underlying Petitioner's Plea*

Petitioner's convictions arise from the shooting death of his girlfriend, Diane Alexander, and the baby with whom she was pregnant at the time of the shooting. At the preliminary examination DeAngelo Chambers, Alexander's 16-year-old son, testified that he was in the home shared by petitioner and Alexander on the date of the shooting when he heard them arguing upstairs. His mother came downstairs and started to iron some pants, and petitioner followed her. The argument continued, and then petitioner went upstairs briefly. He came back downstairs and the argument again continued. Petitioner returned upstairs again, coming back downstairs after about 20 seconds holding a gun in a paper bag. Petitioner then fired 3-4 shots at Alexander. Alexander was pregnant at the time of the shooting. *See* Prelim. Exam. Tr., at 7-16.

Detroit Police Department Sergeant Earnest Wilson testified that on the date of the shooting, he took a statement from petitioner after petitioner had been advised of and waived his *Miranda* rights. Sergeant Wilson read from petitioner's statement. In the statement petitioner indicated that he and Alexander had been arguing, and that when he came downstairs she pulled a gun on him. As he tried to push the gun away, Alexander fired a shot. Petitioner gained control of the gun, and fired 2-3 shots at her. Petitioner called his daughter to come get him, telling her that he thought he had killed Diane. He threw the gun in a pile of trash on the street. The statement ended with an apology to Alexander's children written by petitioner. *See id.* at 44-47.

Tiffany Drake, petitioner's 26 year-old-daughter, testified that petitioner called her on the

5

day of the shooting, saying: "Come now.  I just killed Diane."  *Id*. at 49.  She picked-up petitioner,

and he indicated that he had shot Alexander in the head and the chest.  He told Drake that the two

had been arguing and that he "couldn't take it no more."  *Id*. at 50.  Drake then drove petitioner to

the police station.  *See id.*

The parties stipulated that Dr. Francisco Diaz had examined Alexander's body and found a

through-and-through gunshot wound on the palm of the left hand, a through-and-through gunshot

wound to the left frontal parietal area of the skull, and a penetrating gunshot wound to the top left

shoulder which proceeded downward and to the right, perforating the left lung and aorta.  Dr. Diaz

determined that Alexander died of multiple gunshot wounds, and classified her death as a homicide.

*See id*. at 53-55.  The parties also entered a stipulation regarding petitioner's prior convictions for

purposes of the felon-in-possession charge.  *See id*. at 55.

Finally, Dr. Yung A. Chung testified at the preliminary examination that he performed an

autopsy on Alexander's baby.  According to medical records, the baby was delivered by Caesarian-

section following the shooting and Alexander's death.  The baby survived for about seven hours.

Based on the development of the baby and its weight, he estimated a gestational age of about 23

weeks.  The cause of death was prematurity, and Dr. Chung classified the death as a homicide.  *See*

*id*. at 58-60.  Petitioner was bound over for trial on two counts of first degree premeditated murder,

as well as on the two firearm charges.  A pretrial motion to quash the first degree murder charges

was denied by the trial court.  *See* Mot. Tr., dated 2/7/03, at 4-8.

Petitioner was represented primarily by Gabi Silver, assisted at the time of the plea by David

Cripps.  The prosecutor was Lisa Lindsey.  Prior to trial, the prosecution offered a plea deal whereby

petitioner would plead guilty to two counts of second degree murder and the firearm charges, and

receive a sentence of 30-50 years' imprisonment plus two years' imprisonment on the felony-firearm

charge. Petitioner initially rejected this offer, and jury *voir dire* commenced. At the start of the

second day of *voir dire*, petitioner again indicated that he did not wish to take the plea deal.

Petitioner's counsel indicated that petitioner was having trouble understanding the deal and believed

that he would be getting 50 years' imprisonment. The court and counsel explained that, under the

deal, petitioner's minimum sentence would be 30 years plus 2 years for the felony firearm

conviction, after which he would be eligible for parole, and that 50 years would be the maximum

he could serve. *See* Jury Trial Tr., dated 2/13/2003, at 3-5. Petitioner indicated that he did not want

to take the deal because it would in effect be a life sentence. *See id*. at 6. Petitioner also expressed

some confusion regarding his appeal rights. Petitioner and his counsel then had an off-the-record

conversation. When the court went back on the record, the following exchange occurred:

| THE COURT: | Counsel had conversation with her client off the record regarding appeals, and I overheard the defendant indicate that he felt that we were ganging up on him. I don't want – |
| MR. TERRELL: | I wasn't saying you guys. I'm sorry if you thought that. That's not what I meant. |
| MS. SILVER: | Me. |
| THE COURT: | All I'm trying to say is, your attorney has only the best in mind for you. There is no way your attorney would be ganging up on you. I allowed it to be on the record because it's the kind of case that I feel would be in your best interest as well as the family of the victim's best interest, to resolve. |
| | I am here. I have the jurors here. I have no problem going to trial. We will go ahead and do that. But I think what you need to understand is the risk you're taking and I'm not sure you do. But if you do, then we will go ahead. I have the jury here, and I'm not going to delay any longer. So we need to go ahead with the jury at this point in time. |
| | You have your hand up, whatever it is you want to say, now would be the time you say it. |

\* \* \* \*

| MR. TERRELL: | She's sitting here asking me questions, asking me do I understand, and I am replying to her, no, I don't understand. |

|                | But she's telling me, the way she's telling it to me. |
|----------------|-------------------------------------------------------|
| THE COURT:     | Why don't you step back into the back.  I don't want her to talk to you in my presence, I think, unless you want to.  If you want to do it in my presence, that's fine. |

*Id*. at 8.  Another off-the-record conversation was held, after which petitioner indicated that he was accepting the prosecutor's plea offer.  *See id*. at 9-10.

The trial judge then commenced the plea colloquy.  Petitioner indicated that he had read and signed the plea offer, and that he understood the offer.  *See id*. at 11.  The judge explained the charges petitioner was facing , the maximum sentence that each charge to which he was pleading guilty carried, and the actual sentence he would face under the plea deal.  Petitioner indicated that he understood all of these matters.  *See id*. at 11-12.  The judge then explained to petitioner each of the trial and appellate rights he was waiving by pleading guilty, and petitioner indicated that he understood those rights and that he was giving them up by pleading guilty.  *See id*. at 12-15. Petitioner denied that any one had threatened him or promised him anything not reflected in the plea agreement to induce his plea.  *See id.* at 15-16.  The court then attempted to elicit a factual basis for the plea, resulting in the following exchange:

| THE COURT:     | All right, sir.  What is it that you did, sir, that causes you to plead guilty? |
|----------------|-------------------------------------------------------|
| MR. TERRELL:   | The loss of my child is number one. |
| THE COURT:     | What happened that night, what did you, physically, do that night? |
| MR. TERRELL:   | I was in a physical confrontation with my fiancee after she had pulled a firearm on me. |
| THE COURT:     | And what did you do, sir? |
| MR. TERRELL:   | In the midst of trying to disarm her, the gun was discharged three times, and she got (inaudible). |
| MS. SILVER:    | Judge, may I – |
| MR. CRIPPS:    | One minute – |
| THE COURT:     | As soon as Mr. Cripps talks to his client. |
|                | (Off-the-record.) |
|                | Back on the record. |

8

| | |
|---|---|
| THE COURT: | I understand, sir. |
| MR. TERRELL: | I just want to say something to the – |
| THE COURT: | Soon as we're done.  Mr. Terrell, hang with us for just a moment sir. |
| | I know it's very difficult.  Just hang with us, Mr. Terrell. |
| MS. LINDSEY: | Mr. Terrell, I have to ask you some questions: |
| | Did you shoot your girlfriend? |
| MR. TERRELL: | No. |
| THE COURT: | Did you have a gun? |
| MR. TERRELL: | No. |
| THE COURT: | I guess we have to go to trial. |
| THE COURT: | Counsel approach just a moment. |
| MR. TERRELL: | If this is what you want, I'll do it.  I always did what ya'll [sic] asked me to do.  If this is what you want, I'll do it. |
| THE COURT: | Sir.  Sir.  I know it's difficult for you. |
| MR. TERRELL: | I'm doing it because I feel like that's what they want.  And ever since I've been with them, everything they ever wanted I gave it to them.  That's why I'm doing it.  Don't make me say something that I didn't do, but I'll accept it.  I'll take it and go, please. |
| THE COURT: | No, you won't. |
| MR. TERRELL: | Please.  Is this what you want. |
| THE COURT: | Sir, I cannot take a plea. |
| MR. TERRELL: | I can't tell you I did something that I didn't do. |
| THE COURT: | Then I cannot take a plea.  Just go back.  I'm going to bring in the jury.  We'll clear the courtroom.  Have a seat.  Get yourself together.  You've got two minutes to get yourself together.  I'm bringing in the jury and we will have a trial.  No more negotiations one way or the other.  It's all done. |

*Id*. at 16-18.  The jury venire was brought back into the courtroom, and *voir dire* recommenced.

After the lunch break, petitioner again indicated that he wished to accept the plea deal offered by the prosecutor, resulting in the following colloquy:

| | |
|---|---|
| THE COURT: | It is my understanding that with regard to the plea agreement that we started to enter this morning that Mr. Terrell has had some time to think about it over the lunch hour and have further discussions with his attorney and family, and that he has determined that he wishes the Court to resume the pre trial settlement offer and notice of acceptance, the taking of the plea that we were in process. |

|                  | If you wish me to do so, I will go back over all of the rights, or I can start again where we left off, which was where I asked you what it is that you did instead of me just asking you to freely tell me, I believe the Prosecutor will ask you some questions now. |
|------------------|---|
|                  | Would you like me to go back over this form with you again? |
| MR. TERRELL:     | No, ma'am. |
| THE COURT:       | You feel that you remember everything that we said this morning? |
| MR. TERRELL:     | Yes. |
| THE COURT:       | And you understood it then and you understand it now? |
| MR. TERRELL:     | Yes. |
| THE COURT:       | And this is still your signature in the lower left hand corner? |
| MR. TERRELL:     | Yes. |
| THE COURT:       | All right. Them [sic] where we left off was I had asked you if anyone had threaten [sic] you, promised you anything or used any form of undue influence to persuade you to offer the Court a plea of guilty where you had indicated no; is that still correct? |
| MR. TERRELL:     | Yes. |
| THE COURT:       | And you are still under oath, you understand that? |
| MR. TERRELL:     | Yes. |
| MS. LINDSEY:     | Now, Mr. Terrell, I have to ask you some questions and I just have to ask you basically a background question first: |
|                  | Did this happen on Taylor Street in the City of Detroit? |
| MR. TERRELL:     | Yes, ma'am. |
| MS. LINDSEY:     | Did you have a gun on that day, on the day of October 8th, year 2002? |
| MR. TERRELL:     | Yes, ma'am. |
| MS. LINDSEY:     | Did you shoot Diane Alexander? |
| MR. TERRELL:     | Yes, ma'am. |
| MS. LINDSEY:     | Did you know she was pregnant? |
| MR. TERRELL:     | Yes, ma'am. |
| MS. LINDSEY:     | Did the baby die as a result of you shooting Diane Alexander? |
| MR. TERRELL:     | Yes, ma'am. |
| MS. LINDSEY:     | And did you know when you did that it was wrong to do that? |
| MR. TERRELL:     | Yes, ma'am. |
| THE COURT:       | Are you satisfied? |
| MS. SILVER:      | Yes, Your Honor. |
| MS. LINDSEY:     | People are satisfied with the factual basis. Additionally, were you previously convicted of carrying a concealed weapon. |

10

|                |                                                                                                                                              |
|----------------|----------------------------------------------------------------------------------------------------------------------------------------------|
|                | Did you have a prior conviction of carrying a concealed weapon?                                                                               |
| MS. SILVER:    | In the past in 1997?                                                                                                                          |
| MS. LINDSEY:   | Will counsel stipulate, I have to certify?                                                                                                    |
| MS. SILVER:    | Vincent, you have one prior conviction that was for carrying a concealed weapon; is that right?                                               |
| MR. TERRELL:   | Yes, ma'am.                                                                                                                                   |
| MS. LINDSEY:   | And you knew at the time that you had that gun that you weren't supposed to have a gun?                                                       |
| MS. SILVER:    | Because you have [a] previous conviction?                                                                                                     |
| MR. TERRELL:   | Yes, ma'am.                                                                                                                                   |
| MS. LINDSEY:   | Nothing further.                                                                                                                              |
| THE COURT:     | Are you satisfied?                                                                                                                            |
| MS. SILVER:    | Yes, Your Honor.                                                                                                                              |
| THE COURT:     | Prosecution has indicated they are satisfied.  The Court finds the plea of guilt to be understanding, voluntary, and accurate. I do accept the plea. |

*Id*. at 98-102.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

11

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

12

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Validity of Plea and Ineffective Assistance of Counsel (Claims I & II)*

Petitioner contends that his plea is invalid both because it was not voluntary and knowing, and because it resulted from ineffective assistance of counsel. Specifically, petitioner contends that: (1) there was not a sufficient factual basis for the plea; and (2) the plea was induced by trial counsel's coercive tactics. He also contends that counsel was ineffective for failing to: (1) challenge the admissibility of his statement; (2) investigate the case and legal issues; (3) meet with him in jail to discuss the case; and (4) investigate known defense witnesses. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the

13

totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153.  A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.  Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an

14

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828. However, with respect to the prejudice prong it is not enough for petitioner to merely allege that she would have insisted on going to trial had counsel properly advised him. As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the

15

petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

2.   *Analysis*

*a.  Factual Basis*

Petitioner first contends that his plea was not supported by a factual basis. This claim fails to state a basis for habeas relief. "The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution[.]" *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). Because the writ of habeas corpus exists only to correct errors of federal law, therefore, a state court's failure to elicit a factual basis for a guilty plea does not state a claim cognizable on habeas review. *See United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Coddington v. Langley*, 202 F. Supp. 2d 687, 702 (E.D. Mich. 2002) (Tarnow, J.). Accordingly, petitioner is not entitled to habeas relief on this claim.

*b.  Coercion by Counsel*

16

Petitioner contends that his plea was coerced by counsel.  Specifically, petitioner contends that counsel coerced him because she "consistently threatened . . . that he was guaranteed a life sentence if he went to trial and was found guilty; . . . contacted [his] family members and threatened and coerced them into contacting [him] to apply pressure on [him] in order to get him to take the plea; [and] even allowed [him] to use her cell phone while he was in the court's holding pen, to call and/or speak with his family to allow them to apply more pressure upon [him] to take the plea." Pet.'r's Br., at 6-7.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

As an initial matter, the record belies petitioner's assertion that he was coerced.  At the plea hearing, petitioner twice indicated that he had not been threatened by anyone, and that it was his own decision to plead guilty.  These statements by petitioner, made while under oath and in open court, carry a strong presumption of truthfulness.  *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").  Where, as here, "the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotation omitted).  Because petitioner indicated under oath that his plea was not coerced, and because he has presented no evidence to contradict his assertions at the plea hearing, his claim is without merit.  *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (court did not commit error in denying defendant's motion to withdraw plea where his allegations of coercion were belied by his statements at the plea hearing); *Jones v. Page*, 76 F.3d 831, 845 (7th Cir. 1996) (habeas relief not warranted where

17

petitioner "made two clear and unequivocal statements at the plea hearing which belie the claim he is now making that he was pressured or coerced into pleading guilty."); *Otero-Rivera v. United States*, 494 F.2d 900, 902-03 (1st Cir. 1974) ("That the plea was 'coerced by defense counsel' is a conclusion unbuttressed by specific facts. Appellant originally told the court 'this is a voluntary plea,' a representation he cannot now so easily repudiate.").

The record does support the assertion that petitioner had trouble deciding whether or not he should take the plea, and that both defense counsel and petitioner's family strongly encouraged him to do so. This type of persuasion, however, does not amount to coercion rendering a guilty plea invalid. Generally, a plea is valid if it "represents a voluntary and intelligent choice among alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The question is "not whether the defendant's decision reflected a wholly unrestrained will, but rather whether it constituted a deliberate, intelligent choice between available alternatives." *Rosado v. Civiletti*, 621 F.2d 1179, 1191 (2d Cir. 1980) (citing *Alford*). Generally, "a plea is improperly coerced where it was the product of: (1) 'physical force or threat of physical force'; (2) 'the improper use of economic power to compel another to submit to the wishes of one who wields it'; (3) 'mental coercion' such as being 'gripped by fear of the death penalty or hope of leniency' such that a defendant 'could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty'; or (4) the defendant's 'sheer inability to weigh his options rationally.'" *United States v. Hernandez*, No. 99 CR 73, 2002 WL 31098505, at *6 (S.D.N.Y. Sept. 18, 2002) (quoting *United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001)).

The alleged pressure by petitioner's attorney and family does not rise to this level of

coercion.  Petitioner was faced with trial on two counts of first degree murder, a crime which carries a mandatory term of life imprisonment without possibility of parole.  There was strong testimony against petitioner, consisting of the eyewitness testimony of the victim's son and the testimony of petitioner's own daughter regarding the incriminating statements made by petitioner. Thus, there was a strong probability that, had petitioner gone to trial he would have been convicted and had no hope for release from imprisonment.  "[D]efense counsel's blunt rendering of an honest but negative assessment of [petitioner's] chances at trial, combined with advice to enter the plea," does not "constitute improper behavior or coercion that would suffice to invalidate a plea." *Juncal*, 245 F.3d at 172; *see also*, *Lunz v. Henderson*, 533 F.2d 1322, 1327 (2d Cir. 1976) ("Advice–even strong urging by those who have an accused's welfare at heart, based on the strength of the State's case and the weaknesses of the defense, does not constitute undue coercion."); *Holtgrieve v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.).  The same is true with respect to any pressure petitioner received from his family.  *See Williams v. Chrans*, 945 F.2d 926, 933 (7th Cir. 1991) (internal quotation omitted) ("Simply because the defendant was subjected to pressure from sources not associated with the state or prosecutors does not mean that the defendant's guilty plea was necessarily involuntary.  It is not an uncommon occurrence that a criminal defendant is pressured to some extent by co-defendants, friends, and relatives.  These types of influences are inevitable and unavoidable.").

It is understandable that petitioner felt somewhat pressured by the fact that he was facing a potential life sentence, and by the circumstances of the crime for which he was charged.  *See Hernandez*, 2002 WL 31098505, at *5.  However, "'distress' and 'nervousness' are the characteristics of most persons facing immediate trial under a criminal prosecution.  To accept

such a normal emotional reaction as a ground to vitiate a plea entered only after extensive questioning of a defendant to assure its constitutional validity, would make a shambles of the guilty plea procedure." *Fluitt v. Superintendent, Green Haven Correctional Facility*, 480 F. Supp. 81, 86 (S.D.N.Y. 1979). It is further understandable that petitioner may have felt pressured by both counsel and his family to accept the plea deal. "It is . . . commonplace that a defendant will feel 'coerced' in the lay sense of the word by an attorney's recommendation to plead guilty rather than proceed to trial. Such recommendations often come with predictions of almost inevitable conviction at trial followed by a long jail sentence. A feeling of duress is hardly an unusual outcome of such deliberations." *Juncal*, 245 F.3d at 174. However, petitioner has not shown pressure to such an extent that his will was overborne or he was unable to rationally weight the options facing him, a conclusion buttressed by the fact, noted above, that petitioner twice stated that his plea was voluntary and that he was not coerced. *See Williams*, 945 F.2d at 933. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Counsel's Failure to Challenge Inculpatory Statement

Petitioner next contends that counsel was ineffective for failing to challenge the statement he gave to Sergeant Wilson. Petitioner contends that the statement contained fabrications by Sergeant Wilson. This claim fails for two reasons.

First, counsel did, in fact, file a motion to suppress the statement. At the hearing on that motion, counsel indicated that the prosecutor had not listed Sergeant Wilson as a witness, and thus assumed that the prosecutor was not planning on introducing the statement at trial. The prosecutor agreed that she did not intend to introduce the statement, at which point counsel withdrew the motion. *See* Motion Tr., dated 2/7/03, at 3-4. Thus, it was clear before petitioner entered his plea

20

that the statement would not be introduced at trial, and the failure of counsel to have the statement suppressed could not have affected his decision to plead guilty. Petitioner contends that counsel still should have sought to have the statement suppressed, because it was used to bind him over on the first degree murder charges and had it been suppressed, the trial court might have granted the motion to suppress. However, in denying petitioner's motion to quash the trial court concluded that the testimony of DeAngelo Chambers alone was sufficient to establish probable cause for the charges. *See id.* at 10-11. Thus, the fact that the statement had not been suppressed played no role in the trial court's rejection of petitioner's motion to quash.

Second, petitioner cannot show that any motion to suppress would have been granted. Petitioner does not contend that the statement he gave to Sergeant Wilson was involuntary. Rather, he contends only that Sergeant Wilson fabricated some portions of that statement. In *People v. Spivey*, 109 Mich. App. 36, 310 N.W.2d 807 (1981), the court of appeals affirmed the conclusion of a trial judge that no evidentiary hearing was necessary under *People v. Walker*, 374 Mich. 331, 132 N.W.2d 87 (1965), where the defendant claimed only that the law enforcement officials had fabricated a few sentences that they inserted into his admittedly voluntary confession. *See Spivey*, 109 Mich. App. at 37, 310 N.W.2d at 808. The *Spivey* court noted that there was no issue of voluntariness, and relied on prior cases holding that questions of credibility, truthfulness, "and whether the statement had been made at all" were for the jury rather than the judge to determine. *See id.* Thus, even had counsel pressed on with her motion to suppress petitioner's statement, there is not a reasonable probability that the motion would have been granted. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Counsel's Failure to Investigate and Meet with Petitioner

Petitioner also alleges that counsel failed to investigate the facts and law, meet with petitioner, or investigate known defense witnesses. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

For the most part, petitioner does not identify with specificity any witnesses counsel should have interviewed, any avenues of investigation counsel should have pursued, or any specific motions that counsel should have filed. Petitioner's conclusory allegations are insufficient to establish that counsel was ineffective. *See Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) (Friedman, J.); *Matura v. United States*, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995). He likewise does not suggest any additional exculpatory evidence or theories that would have been uncovered by further investigation or preparation. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it could have affected the outcome of the trial.").

Petitioner does identify three potential witnesses that counsel could have investigated. One of these is Tiffany Drake, petitioner's daughter. However, Drake testified at the preliminary examination *unfavorably* to petitioner. Petitioner does not suggest any testimony that she could have offered which would have exculpated him, in light of the damaging testimony she gave at the preliminary examination. The second witness identified by petitioner is Laura Carter. However, petitioner does not suggest that she witnessed the shooting, and he does not provide any description of her purported testimony. The third witness petitioner contends counsel should have interviewed is Telicia Chambers, the victim's daughter. According to petitioner, she could have testified that she was present at the time of the incident, that she heard the victim threaten to shoot petitioner, and

22

that the victim was the one who first had the gun.  However, petitioner has failed to present any evidence apart from his own assertion, such as an affidavit by Telicia, that Telicia both would have testified and would have done so in a manner favorable to him.  *See Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989); *Amos v. Cain*, No. 04-2029, 2008 WL 782472, at *9 (E.D. La. Mar. 20, 2008) ("Petitioner has brought forth no evidence, such as an affidavit from [the witness], in support of the bald assertion that [the witness] would have testified in a manner favorable to the defendant.").  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### *e. Prejudice*

For the reasons set forth above, with respect to each ineffective assistance claim petitioner cannot show that counsel was deficient or that he was specifically prejudiced by counsel's failures. Even assuming that petitioner could make these showings with respect to any of the ineffective assistance of counsel claims, however, petitioner still cannot show the type of prejudice necessary to establish his entitlement to habeas relief.  As noted above, to establish prejudice–that is, to show that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial–petitioner must show that "there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him."  *Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.)  In other words, to show that there is a reasonable probability that the result of the proceeding would have been different, as required to establish prejudice, "[i]t is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial

instead of after entering a guilty plea." *Id.*; *see also*, *Thirkield*, 199 F. Supp. 2d at 655; *Holtgreive*, 174 F. Supp. 2d at 587.

As explained above, there was significant evidence of petitioner's guilt presented at the preliminary examination. In particular, an eyewitness testified that petitioner shot the victim, and petitioner's own daughter testified that he admitted to shooting the victim. In light of this testimony, there is not a reasonable probability that petitioner would have been acquitted even had counsel not made the errors alleged by petitioner. For this additional reason, petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.[1]

E.       *Post-Conviction Relief Claim (Claim III)*

---

[1]In his reply brief, petitioner contends that he is entitled to a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648 (1984), such that a showing of prejudice with respect to his ineffective assistance of counsel claims is not necessary. The Court should disagree. Petitioner has pointed to no clearly established Supreme Court precedent requiring application of the presumed prejudice standard in the circumstances present here. The Supreme Court has limited the presumed prejudice standard to three types of ineffective assistance claims: (1) complete denial of counsel; (2) government interference with the right to counsel; and (3) conflicts of interest. *See Smith v. Robbins*, 528 U.S. 259, 287 (2000) (citing *Strickland*, 466 U.S. at 692; *Cronic*, 466 U.S. at 659 & n.25). The Supreme Court has stated that the first category–complete denial of counsel–encompasses both actual and constructive denials of counsel, and that a constructive denial of counsel can occur where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. The Supreme Court has recently explained, however, that for an ineffective assistance claim to come within this limited exception to *Strickland*, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). The distinction is between "bad lawyering" and "no lawyering," *Woodard v. Collins*, 898 F.2d 1027, 1028 (5th Cir. 1990); *see also*, *Moss v. Hofbauer*, 286 F.3d 851, 861 (6th Cir. 2002), and the difference is not one of degree, but one of kind, *see Bell*, 535 U.S. at 697.

Here, petitioner has not demonstrated that counsel completely failed to subject to the prosecution's case to meaningful adversarial testing. Counsel participated in the preliminary examination and cross-examined the witnesses, and argued various matters on petitioner's behalf, and advised him regarding the prosecution's plea offer. *See Moss*, 286 F.3d at 859; *Martin v. Mitchell*, 280 F.3d 594, 613 (6th Cir. 2002); *Cooks v. Ward*, 165 F.3d 1283, 1296 (10th Cir. 1998). All of petitioner's claims are run-of-the-mill pretrial and trial error claims subject to the *Strickland* framework. *See, e.g.*, *Patrasso v. Nelson*, 121 F.3d 297, 300 (7th Cir. 1997); *Gregory v. United States*, 109 F. Supp. 2d 441, 450 (E.D. Va. 2000). In short, "[t]he aspects of counsel's performance challenged by [petitioner] . . . are plainly of the same ilk as other specific attorney errors [the Supreme Court] ha[s] held subject to *Strickland*'s performance and prejudice components." *Bell*, 535 U.S. at 697-98.

Petitioner next argues that the trial court erred in denying his motion for relief from judgment because the trial judge should have recused herself.  This claim is without merit.

It is well established that nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue[.]" *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *Alley v. Bell*, 307 F.3d 380, 386-87 (6th Cir. 2002).  This rule extends to a claim that the judge handling the postconviction proceeding was biased.  *See Alley*, 307 F.3d at 386-87.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis*

*v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/13/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 13, 2009.

s/Eddrey Butts
Case Manager

26